[Crim. No. 169.   Fourth Appellate District.—October 22, 1934.]

THE PEOPLE, Respondent, v. LILLIAN DUNN et al., Appellants.

George R. Anderson for Appellants.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Walter C. Haight, District Attorney, and Sherrill Halbert, Deputy District Attorney, for Respondent.

MARKS, J.—By an indictment returned by the grand jury of Tulare County the defendants, and Lillian Monroe, were charged with the crime of riot. They were accused of committing the offense in that they did, "acting together, threaten to use force and violence upon the food depot of the County of Tulare, located in the town of Pixley in said County, and upon the persons in authority therein, the threat to use such force and violence being accompanied by the immediate power of execution, and being without the authority of law". The case against Lillian Monroe was dismissed during the trial. The other defendants were found guilty by the jury and judgment was pronounced upon them by the trial court.

As grounds for a reversal of the judgment it is urged: (1) That the verdict and judgment are not supported by and are contrary to the evidence; (2) errors of law occurring during the trial in ruling on objections to the introduction of evidence; (3) misconduct of the trial judge; (4) misconduct of the district attorney; (5) errors in giving, and refusing to give, instructions to the jury.

We have studied the entire record and believe it unnecessary to detail any considerable portion of the extensive evidence. That portion supporting the verdict and judgment may be summarized as follows: A supply depot was maintained in the town of Pixley in Tulare County where food was distributed to those on the county relief rolls on each Thursday. On March 22, 1934, the depot was

opened at about 9 o'clock in the morning by Jap Ellege and several assistants. There were several peace officers present. Applicants for food, numbering between 75 and 150, were also present. To save time and congestion, the county authorities had decided to give food to each applicant once every two weeks instead of once each week. The three defendants, and others, were told by Ellege to return on the next Thursday for food, as the rule applied to them. The defendants cursed Ellege and his assistants; said they were going to have food if they stayed all day to get it; they would smash the place down and get it; would chop it down; would burn it; that they ought to rush the depot; that they would dynamite it; that they would take the food. These identical threats were not all made by all the defendants, but each defendant made some of them, and generally in the presence and hearing of the others. Threats of personal violence were made against Ellege. The three defendants circulated through the groups of indigents outside of the depot, talking to them, and late in the afternoon they (the defendants), with about 30 or 40 others, gathered outside the closed door of the depot and engaged in shouting, cursing and threatening those inside. Jap Ellege said of this occurrence: "There was a terrible noise outside. To be frank, it put you in mind of an Indian wahoo dance. As I say, it was a terrible noise." Ellege and his assistants, escorted by officers, left the depot by a small door on the opposite side from the crowd. Another officer locked the main door to the depot from the outside. No one was injured except· Mrs. Dunn, who had her foot smashed as she attempted to force her way through this main door.

Defendants urge that this evidence is insufficient ·to support the verdict and judgment for the reasons that they did not make identical threats and so were not shown to be working together, and that it was not shown that there were any matches, axes or dynamite at the food depot. From ·this they argue that it was not shown that there were "two or more persons acting together" in making the threats, and that the evidence does not establish that they had an "immediate power of execution" of the threats, as required by section 404 of the Penal Code.

We do not so construe the evidence. Neither do we understand the law to require the evidence to show an immediate power to execute all the threats made if there is shown the power to execute some of them. Threats may be made by actions as well as by words. Many of the verbal threats may well have been uttered by defendants to inflame their auditors to violence. That they succeeded, at least in part, is shown by the mob which gathered outside of the main door of the food depot at the time it was closed. It should be evident to anyone that this mob certainly had the power to rush the depot and take food by force. That these things were not actually accomplished should not relieve the defendants from the results of their efforts to incite those engaging in the demonstration.

The following quotation from *People* v. *Bradley*, 137 Cal. App. 225 [30 Pac. (2d) 438], may be adopted to express our conclusions on the question of the sufficiency of the evidence to sustain the verdict and judgment: "The evidence is ample to sustain the judgment. Section 404 of the Penal Code defines a riot as 'Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot.' While there is no proof of the use of actual force or violence on the part of appellant or his associates, there was a disturbance of the public peace, and conduct on their part, which indicated threats to use force or violence. They certainly possessed the immediate power to put their threats into execution. All of the necessary elements of the offense were thoroughly established in this case."

■ On March 15, 1934, Harding and a number of others were at the food depot. Three times that day he said to those assembled: "I think it would be a good time to pull a little demonstration here. If you will get up forty or fifty men, I will lead them and we will go in and help ourselves. If he (Ellege) undertakes to make a gun play, some of you take it away from him and pass it down the line, and then help yourselves." Defendants complain of the introduction of this evidence. The only objection made to it was that none of the other defendants were shown to have been present. The objection as made was properly

overruled. No request was made for an instruction confining the application of this evidence to Harding. There is no merit in the contention that there was error in any of the other rulings of the trial court on objections of defendants to questions propounded to witnesses.

The record discloses no misconduct on the part of the trial judge. He was patient with the defendants and their counsel in situations which were trying.

Defendants have apparently abandoned their last two assignments of error as they do not point out in their briefs any instances of misconduct on the part of the district attorney, or errors in instructions given or refused. We are not required to search for errors where none are pointed out.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.